617 So.2d 96 (1993)
Sean E. AHLUM
v.
The ADMINISTRATORS OF the TULANE EDUCATIONAL FUND.
No. 92-CA-2038.
Court of Appeal of Louisiana, Fourth Circuit.
March 30, 1993.
Rehearing Denied May 12, 1993.
Wiley G. Lastrapes, Jr., Lastrapes & Weiss, New Orleans, for appellant.
Henry L. Klein, Heisler & Wysocki, New Orleans, for appellee.
Before BYRNES, PLOTKIN and JONES, JJ.
PLOTKIN, Judge.
The issue in this appeal is whether a district court has the power to enjoin a private educational institution, Tulane University, from implementing sanctions against a student arising from an internal disciplinary proceeding. The trial court enjoined Tulane University from imposing disciplinary sanctions against one of its students, *97 Sean Ahlum, for a violation of its student code of conduct. We reverse.

FACTS:
Sean Ahlum, a freshman undergraduate at Tulane University, met R.C., a female freshman at Tulane, at a local bar, "The Boot." Both he and R.C. were inebriated. They left the bar together because, according to Ahlum, R.C. wished to engage in sexual intercourse with him. Ahlum claims that R.C. suggested that they "do it" in the middle of the quadrangle of Tulane while walking to his dormitory. According to Ahlum, R.C. asked if he had a condom. Ahlum replied that he had one in his room, so they continued to walk toward his dormitory.
Upon arriving at the dormitory, Ahlum complied with the dormitory policy of signing guests in and relinquishing the guest's I.D. According to the dormitory monitor, Lionel Zachery, R.C. was so inebriated that Ahlum had to hold her up while he attempted to find her I.D. When Ahlum was unsuccessful in finding R.C.'s I.D., Ahlum claimed that R.C. was about to be sick and suggested that he take her to one of the upstairs bathrooms, promising that he would bring her back immediately. After waiting several minutes and being concerned that a sexual assault was in progress, Zachery called Tulane Security. By the time Tulane Security arrived on the scene, Ahlum and R.C. had reappeared.
Zachery asked R.C. to remain and speak with a security officer. One of the security officers asked her some questions concerning whether her sexual conduct was consensual. R.C. replied, "yes." The officer thought R.C. was drunk, but felt she was able to comprehend and answer questions. When R.C. was asked whether she wanted assistance, she said that she did not need any help and walked off towards her dorm.
When R.C. was awakened by her roommate the next morning, she discovered that she was wearing an unfamiliar shirt and that she was missing her sweater, shirt, bra, and cotton braided necklace. When she determined that the shirt belonged to Ahlum, she had a friend retrieve her possessions from him. Ahlum told the friend his version of the events, saying that R.C. was the aggressor and that they had engaged in consensual sex. Upon hearing Ahlum's version, R.C. confronted Ahlum. After speaking with Ahlum, R.C. claimed that she had not consented to the intercourse.
A few days later R.C. filed a complaint with Tulane Campus Police. After a lengthy investigation, Ahlum was charged with four violations of Tulane's Code of Student Conduct. A Joint Hearing Board, consisting of two faculty members, two students, and the Associate Vice-President for Student Affairs, was convened on March 26, 1992. The hearing board unanimously found Ahlum in violation of the Code of Student Conduct rule III(A)(1), which prohibits a student from "[c]ausing harm or reasonable apprehension of physical harm including sexual assault," while finding him innocent of the other violations.
Ahlum appealed the board's decision to the Appellate Committee. The committee overturned the decision and remanded it for a new Joint Hearing Board hearing because copies of the Louisiana criminal statute on "simple rape" had been placed into the record, prior to the hearing, without Ahlum's knowledge. A second hearing resulted in a unanimous finding that Ahlum violated III(A)(1). However, the tape recorder which was used to record the hearing malfunctioned and no recording of the hearing was made. As a result of the malfunction no transcript of the proceeding was available for appellate review.
Dr. Martha Sullivan, the Vice-President of Student Affairs, accepted the determinations of the Hearing Board, which are merely recommendations. She imposed the following sanctions:
1) Suspension as of April 23, 1992 with no academic credit for the Spring 1992 semester and with conditional re-entry once the following have been fulfilled:
a) completion of an awareness raising program such as: "Men Against Rape" or "Extension" which has been approved by the Associate Vice-President for Student Affairs.

*98 b) preparation of a 30-minute video presentation of a model training session for residential advisors on how to deal with sexual assault. This video will be viewed only by the Associate Vice-President for Student Affairs.
c) writing a letter to [R.C.], after completion of a) and b) above. Such a letter will be delivered to the Associate Vice-President for Student Affairs who will deliver such to [R.C.], if she so desires.
2) Disciplinary probation for a period of one (1) semester, once re-enrolled.
Ahlum's appeal of these sanctions to the Appellate Committee was unsuccessful.
Ahlum filed for relief in Civil District Court, seeking to enjoin Tulane from imposing the preceding sanctions. He received a temporary restraining order allowing him to complete his semester exams. The application for preliminary injunction was heard on affidavits. The trial court preliminarily enjoined Tulane from implementing the sanctions and ordered Tulane to convene a third Joint Hearing Board to consider the charges against Ahlum, requiring that a written record of the proceedings be made. Tulane appeals this judgment.
Tulane asserts the following assignments of error: 1) that Ahlum would not suffer irreparable harm, thus the injunction was an improper remedy; 2) the trial court was without power to enjoin a private school from implementing an internal disciplinary decision; and 3) the trial court judgment ordering another hearing went beyond the relief requested by the parties. Because we find merit in Tulane's second assignment of error the others are pretermitted.

TRIAL COURT'S POWER TO ISSUE INJUNCTION:

Private v. Public Institutions:
Tulane asserts in its second assignment of error that the judiciary is without power to enjoin a private institution from implementing its own internal disciplinary sanctions. As support, Tulane cites Flint v. St. Augustine High School, 323 So.2d 229, 233 (La.App. 4th Cir.1975), writ denied, 325 So.2d 271 (La.1976), wherein this court stated that a private institution has almost complete autonomy in controlling its internal disciplinary procedures. Additionally, this court stated that "a private institution is entitled to a very strong but rebuttable presumption that its internal administrative actions are taken in absolute good faith and for the mutual best interest of the school and the student body." Id. at 235, n. 1.
The judiciary has recognized that a private institution, as compared to a public institution, has the power to create, administer and implement its own rules and procedures concerning the qualifications and conduct of its students, staff and faculty. Absent some form of state action, the courts have refused to hear claims which allege that a private institution's practices have violated constitutional guarantees. See Blouin v. Loyola University, 506 F.2d 20 (5th Cir.1975); Wahba v. New York University, 492 F.2d 96 (2nd Cir.1974).
In the instant case, Tulane has promulgated the Code of Student Conduct which states in the preamble that "Tulane University... expects and requires of all of its students behavior compatible with its high standards of scholarship and conduct." The code covers such subjects as conduct violations, the sanctions to be imposed as well as the procedures to be employed before imposing such sanctions. Clearly, the code requires that the student body adhere to certain standards of conduct and provides for appropriate penalties for violations. Tulane determined that one of its students violated those standards and imposed what it feels are appropriate sanctions. It is not the place of the judiciary to substitute its own view of appropriate standards of conduct or appropriate penalties for the breach of those standards in place of a private institution's decision.

Arbitrary and Capricious:
The fact that the judiciary adheres to this policy of judicial restraint does not render the actions of a private institution inviolate. As the language in Flint recognizes, the power of a private institution is not absolute: "That is not to say that due process safeguards (in private institutions) *99 can be cavalierly ignored or disregarded." Id. at 235. The disciplinary decisions of a private school may be reviewed for arbitrary and capricious action. Babcock v. Baptist Theological Seminary, 554 So.2d 90, 97 (La.App. 4th Cir.1989); citing Lexington Theological Seminary v. Vance, 596 S.W.2d 11 (Ky.Ct.App.1979); Tedeschi v. Wagner College, 49 N.Y.2d 652, 427 N.Y.S.2d 760, 404 N.E.2d 1302 (1980); Coveney v. President & Trustees of Holy Cross College, 388 Mass. 16, 445 N.E.2d 136 (1983). Therefore, if the record indicates that Tulane's actions in suspending Ahlum were arbitrary and capricious, then its decision may be reviewed by the judiciary.
The Louisiana Supreme Court has defined "capricious" as a "conclusion made without substantial evidence or a conclusion contrary to substantial evidence." Coliseum Square Association v. New Orleans, 544 So.2d 351, 360 (La.1989) The word "arbitrary" "implies a disregard of evidence or of the proper weight thereof." Id. (Citations omitted). Using this standard, we find that neither the procedures employed nor the evidence relied upon by Tulane were deficient so as to render its decision arbitrary and capricious.

Procedures Employed By Tulane
Here, Tulane has in place an intricate system of hearings designed to give each student an opportunity to present his version of the facts and to confront the witnesses against him. Tulane also allows both the complainant and accused student to choose an advisor from within the University to provide assistance.
During the initial hearing, Ahlum was allowed to present his version of the facts; he does not allege that he was unable to do so. The Hearing Board found unanimously that Ahlum was in violation of the Code of Student Conduct. This decision was reversed and remanded to a new Hearing Board by the Tulane Appellate Committee because the Louisiana statute concerning "simple rape" was included in the panel's packet of information without Ahlum's knowledge. At the second hearing, Ahlum was again allowed an opportunity to present his version of the facts to a Hearing Board. Again, the Board unanimously concluded that Ahlum was in violation of the Code of Conduct. Ahlum was afforded another appeal, which was denied by the Appellate Committee.
Clearly, Tulane took great pains to inform Ahlum of the charges against him and allow him an opportunity to be heard. The process afforded Ahlum certainly complies with, and may exceed, the due process required in public schools as envisioned by the United States Supreme Court in Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).[1] In Goss, the Court found that, in the case of a short-term suspension, a public high school student should be afforded minimal due process protections, i.e. notice and an opportunity to present his version of the facts. The Court implied that more serious penalties, such as long term suspension and expulsion, may be deserving of greater due process protections. Id. at 584, 95 S.Ct. at 741. However, in balancing the need to allow school administrators to effectively operate their schools with the student's interest in not being deprived of his education, it seems the court would not impose due process requirements any more stringent than those employed by Tulane in its Code of Student Conduct. Therefore, since Tulane employed two separate hearings and appeals, which afforded Ahlum ample opportunity to present his case, this court cannot say that Tulane reached an unreasoned or thoughtless decision.

Legal Counsel
As a procedural error, Ahlum claims that he was denied legal counsel and forced to cross examine witnesses on his own during the hearing. Initially, as noted earlier, Tulane *100 is a private actor not subject to the requirements of the due process clause. Therefore, it is not required to allow the student to bring legal counsel to represent him in the hearing; in fact, Tulane may exclude anyone it wishes from the hearing. Additionally, Tulane's system is designed to be non-adversarial, so that both sides have ample opportunity to present their version of the facts. Since neither side is allowed legal counsel the accused student is not prejudiced by the prohibition.
Furthermore, imposition of a rule requiring a private University to allow counsel to be present at the hearing would impose unnecessary legal formalism into Tulane's procedures which Tulane's system seeks to avoid. Unless Tulane's system consistently results in decisions which are arbitrary and capricious, it should be allowed to operate without interference from the judiciary. Finally, Tulane's procedures, while not permitting legal counsel to be at the hearing, do not preclude the accused student from procuring assistance from legal counsel prior to or after the hearing. Clearly, Ahlum took advantage of this by consulting his retained counsel at least on the appellate level.
Ahlum also argues that Tulane engaged an experienced prosecutor to present its case and cross examine witnesses. A staff member, Assistant Director of Residence Life, Mr. James Welles, represented Tulane at the hearing. While Mr. Welles had experience in representing Tulane at disciplinary hearings, he stated in his deposition that his role was simply to present Tulane's version of the facts. He stated that he rarely cross examined anyone, and if he did, he only asked a clarifying question. Clearly, Tulane's system is designed to be non-adversarial and allow the accused student the opportunity to present his side. Ahlum does not allege Mr. Welles' presence precluded him from doing so. If the University allows an attorney to present its case and engage in extensive or harsh cross-examination, fairness would dictate that the accused be allowed to have an attorney present to represent his interests. See Jaksa v. Regents of University of Michigan, 597 F.Supp. 1245, 1252 (E.D.Mich.1984). However, that was not the case here. Thus, for the foregoing reasons, Tulane's decision to not allow legal counsel at the hearing will not be disturbed.

Burden of Proof
Ahlum also argues that the burden of proof employed at the hearing level, clear and convincing evidence, radically changed at the appellate level such that Ahlum's right to appeal was effectively eliminated. However, Ahlum misconstrues the burden of proof applied at the appellate level. Rule V(C)(5)(d) of the Code of Student Conduct states that "[i]f the original finding of a violation is held to be arbitrary and capricious, the case may be dismissed." Ahlum states that the standard of "arbitrary and capricious" can be satisfied with a showing of "any evidence." We disagree. As noted above, in applying the arbitrary and capricious standard, the reviewing panel determines whether the decision was based upon substantial evidence or was contrary to substantial evidence. Coliseum Square Association v. New Orleans, 544 So.2d 351, 360. Therefore, because the Tulane Appellate Committee applies the standard of arbitrary and capricious, which is also the standard employed by this court, Ahlum was not denied his right to appellate review.

Substantial Evidence
In applying the arbitrary and capricious standard to the evidence presented to the Tulane Hearing Board, this court is unable to find that either Tulane's decision was not based upon substantial evidence or that it was contrary to substantial evidence. The testimony of several witnesses, all of whom stated that R.C. was extremely intoxicated, was before the Hearing Board. The Board also had before it the uncontested fact that intercourse took place between Ahlum and R.C. Additionally, the Board had before it the testimony of Lionel Zachery, who was in the best position to comment on R.C.'s condition immediately prior to going upstairs to Ahlum's room. Zachery stated that R.C. was so inebriated that *101 Ahlum had to prop her up in order to search for her I.D. Additionally, Zachery testified that Ahlum stated that he was taking R.C. to the bathroom and would return immediately, when in fact Ahlum went to his dorm room and had intercourse with R.C.
Certainly, there are witnesses, such as Ahlum's roommate, who testified that he heard no indication that the intercourse was not consensual. However, the issue in this case is not whether the intercourse was consensual but rather whether Ahlum violated the Code of Student Conduct. Clearly, the Board had before it ample evidence to suggest that Ahlum's conduct was a breach of Tulane's standards of conduct. Because Tulane employed procedures which afforded Ahlum ample process and the Hearing Board had before it substantial evidence, we find that Tulane's decision finding Ahlum guilty of a violation of the Student Code of Conduct was not arbitrary and capricious.

Failure to Produce a Recording of the Hearing:
The trial court ordered Tulane to hold a third hearing with a duly qualified court reporter being present to transcribe the hearing. The trial court apparently was concerned about Tulane's failure to record the second hearing due to a malfunction of the recording device.
Tulane's Code of Student Conduct Rule V(D)(15) requires that "[a]ll hearings of a Joint Hearing Board will be taped for use in deliberation by the Board and for possible appeal." Additionally, Rule V(C)(5), "Procedure," requires that "[a]ppeals shall be decided on the record of the original proceedings and upon written statements submitted by the parties." In the instant case, the recording of the first hearing was erased after the appeal as is required under Tulane's procedures. During the second hearing, the tape recorder apparently malfunctioned and no recording was made. Thus, no recording was made for review by the Appellate Committee. Without a recording of the hearing Tulane did not have a complete record on which to base a appeal. Thus, Tulane clearly violated its own internal disciplinary rules requiring the Appellate Committee to decide an appeal "on the record of the original proceeding."
However, as this court has acknowledged on several occasions, failure to raise an error of the fact finder on appeal serves as a waiver of the error. See Uniform RulesCourts of Appeal Rule 2-12.4. Additionally, Tulane requires that the student include in his statement on appeal "a statement as to the grounds on which the appeal is being made." Tul.C.Stu.Cond. V(C)(4)(d). On appeal to the Tulane Appellate Committee, Ahlum never raised the fact that a recording was not made of the second hearing. Additionally, he cited no errors in the hearing which would have been revealed by the recording. Therefore, even though Tulane violated its own internal rules concerning the recording of the proceedings before the Hearing Board Ahlum made no allegation that he was prejudiced by the error.
Additionally, Tulane's Appellate Committee had before it all of the evidence presented to the members of the Hearing Board which was, in total, approximately a hundred page record of testimony and investigative findings. Because Ahlum did not raise the issue of the missing recording at the appellate level and because the Appellate Committee clearly had evidence on which to base its opinion, this court will treat the absence of the recording as harmless error.
We note that this holding and the rules announced herein is limited to the unique case of a private university's internal disciplinary proceedings.

CONCLUSION
Accordingly, the judgment of the trial court granting a preliminary injunction against Tulane University and ordering a third hearing with a qualified court reporter present is reversed. The preliminary injunction against Tulane is dissolved. All costs of this appeal are assessed against the appellee.
NOTES
[1] Again it must be noted that the standards of due process imposed upon a public institution do not apply to a private actor. Thus, Tulane, as a private actor is not required to abide by the United States Supreme Court pronouncements of what process is due to students of public educational facilities.