955 So.2d 183 (2007)
Curtis Jude LAWRENCE on Behalf of his Minor Child Curtis Joseph LAWRENCE
v.
ST. AUGUSTINE HIGH SCHOOL, Father Joseph Doyle, Father Edward Chiffriller, Father John Raphael, Jr. and the Josephite Community.
No. 2007-CA-0263.
Court of Appeal of Louisiana, Fourth Circuit.
March 21, 2007.
*184 Clifton M. Davis III, Trahan & Davis, L.L.C., New Orleans, LA, for Plaintiff/Appellee.
J. Marc Vezina, Sean R. Dawson, Andrea C. Caplan, Nadia T. Torregano, Vezina and Gattuso, L.L.C., Gretna, LA, for Defendant/Appellant.
Court composed of Judge CHARLES R. JONES, Judge JAMES F. McKAY III, Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS JR., and Judge EDWIN A. LOMBARD.
CHARLES R. JONES, Judge.
The Appellant, St. Augustine High School, which suspended a student for an infraction which violated the student handbook, appeals an adverse judgment in favor of the Appellees. We Reverse.

Facts and procedural history
Curtis Joseph Lawrence ("Curtis Lawrence")[1] is a senior currently matriculating at St. Augustine High. During the summer break between his junior and senior years, Curtis Lawrence was given a reading assignment and required to write *185 a paper based upon the novel, Pride and Prejudice. The assignment was required of all seniors and was scheduled to be turned in by September, 2006. Since Curtis Lawrence was enrolled in an honors English class, the deadline was extended until December 9, 2006.
However, St. Augustine charged Curtis Lawrence with plagiarism by sourcing material from the Internet, verbatim, without appropriate citation to the authority. Plagiarism is in direct violation of the student handbook and is clearly defined therein. St. Augustine charged that Curtis Lawrence also gave a copy of his paper to another student, who in turn copied the paper and turned it in as his own work.
Ms. Sara Butler, an English teacher, upon noticing similarities between the papers, gathered them and brought them to Father John Raphael, the Principal of St. Augustine High School. Fr. Raphael is also the Disciplinarian for the school as well. After reviewing the papers, both Fr. Raphael and Ms. Butler agreed that plagiarism had occurred in a number of cases, eventually involving 14 seniors. Ms. Butler also confronted Curtis Lawrence and another student,[2] but Curtis Lawrence and the student denied that plagiarism had taken place. Ms. Butler then referred the matter to Fr. Raphael for consideration.
After his review of the papers, Fr. Raphael was also convinced that plagiarism had occurred and confronted all of the students in question, along with several other members of the faculty and administration of St. Augustine. Twelve students fully admitted to the plagiarism and were suspended for one day, and received a nine-week Routine Disciplinary Probation, as provided for in the student handbook. However, the remaining two students, Curtis Lawrence and another student, refused to acknowledge or admit to the plagiarism offense, and were notified to contact their parents.
On December 14, 2006, Mr. Lawrence, the named Petitioner/Appellee and father of Curtis Lawrence, arrived at St. Augustine and met with Fr. Raphael, Ms. Butler, and several members of the administration. Mr. Lawrence refused to acknowledge that his son plagiarized material, despite evidence to the contrary. Additionally, Curtis Lawrence and another student refused to disclose who had copied the other's paper, nor would they provide any other information in furtherance of the investigation.
Curtis Lawrence and the other student, as well as the 12 remaining students, were each given a routine one-day suspension, which was served on Friday, December 15, 2006. Incidentally, each of the students also received a grade of zero for the assignment. Section C, paragraphs 4 and 5 of the student handbook provide explanations of disciplinary terms as follows:
4. SUSPENSION
A suspension as a sanction issued to a student who has violated a Class C rule. The length of the suspension depends on the severity of the violation. Generally, suspensions are for one to 5 days. Any assignments missed during the suspension will be made up at the discretion of the teacher. Three or more repeated uniform infractions will result in a Saturday detention. Continued infractions can lead to suspension.
The Principal and Assistant Principal at St. Augustine High School each shall have the authority to suspend any student *186 at St. Augustine High School when behavior warrants such a punishment. The parents or guardian of any student who was suspended from St. Augustine High School shall be notified immediately, either orally or in writing, that the student has been suspended from St. Augustine High School.
A suspended student will automatically be placed on routine disciplinary probation as a condition for his return to school.
5. Disciplinary Probation
ROUTINE
After suspension student will be placed on Routine Disciplinary Probation for a period of nine weeks.
A student on Routine Disciplinary Probation may not publicly represent the school in any activity, nor may he participate in extra-curricular meetings or practices while on probation.
Parents/guardians and student must sign a disciplinary contract when the period of suspension is ended in order for the student to return to school. If a student commits a Class C or Class D violation, or any other serious violation while on probation, he will be dismissed immediately.
SPECIAL
Special disciplinary probation is reserved for students who have been readmitted to St. Augustine after dismissal, or another serious offense that may have warranted dismissal. It is up to the discretion of the Principal to determine whether or not a student will be admitted under the condition of being placed on Special Disciplinary Probation. Like Routine Disciplinary Probation, this student may not publicly represent the school in any activity, nor may he participate in extra-curricular meetings or practices while on probation.
1. Disciplinary Probation lasts for one year from date of infraction.
2. Any teacher can recommend that a student be placed on Disciplinary Probation.
3. If a student on Disciplinary Probation commits a Class C or Class D violation, he may be dismissed from the school.
On the same day, Curtis Lawrence's mother and grandmother came to the school to meet with Fr. Raphael, and brought the Internet source from which the paper originated. The source document showed that the paper was copied verbatim by Curtis Lawrence, and hence, the other student. After viewing the papers, Mrs. Lawrence acknowledged to Fr. Raphael that the paper had been plagiarized, under the definition contained in the Student Handbook. However, Mrs. Lawrence attempted to seek to have Curtis Lawrence relieved of his probation requirement, which would have prevented him from playing on the basketball team, of which he was a member. Curtis Lawrence's probation, which barred him from publicly representing the school in any activity, also affected his ability to play on the basketball team.
On December 18, 2006, Fr. Raphael conducted another meeting with several members of the school's Administration. The Lawrence family, along with Curtis Lawrence and the other student, along with his mother, were present at the meeting. Fr. Raphael advised Curtis Lawrence and the other student that if they did not admit their wrongdoing or identify who had copied the other's paper, that they would receive a Special Disciplinary Probation instead of a Routine Disciplinary Probation. Curtis Lawrence's parents, as well as the parents of the other student, pleaded with *187 their sons to admit their wrongdoing, but to no avail.
Fr. Raphael testified that confronted with the defiance and sarcasm of the two students, and further considering the evidence of plagiarism, he imposed the Special Disciplinary Probation upon the two students instead of the Routine Disciplinary Probation.
Mr. Lawrence lodged both a verbal and written appeal to Father Joseph Doyle, the President of St. Augustine High School. Fr. Doyle conducted an investigation and affirmed the discipline that was imposed. In addition, Mr. Lawrence appealed to Father Chiffriller, the Superior General of the Josephite Priests in Baltimore, Maryland. Fr. Chiffriller elected not to intervene and affirmed the imposition of the discipline against Curtis Lawrence and the other students.
On January 17, 2007, Mr. Lawrence filed a petition for injunctive relief, which alleged irreparable harm because Curtis's probation prohibited his participation in any event for which he could represent the school, and requested a temporary restraining order, which was granted by the district court.[3] The restraining order was subsequently extended until the hearing could be held on February 8, 2007.
The injunction hearing was conducted as scheduled, at which time the district court, in oral reasons for judgment, dissolved the temporary restraining order as to the imposition of the "Routine Disciplinary Probation," but the district court imposed and enjoined St. Augustine from enforcing the "Special Disciplinary Probation" against Curtis Lawrence, finding that the actions of Fr. Raphael were arbitrary. The judgment was subsequently signed by the district court on February 23, 2007. A Notice of Appeal was timely filed, followed by a Motion for Expedited Appeal. St. Augustine also filed a Motion for Expedited Appeal with this Court, which was granted on March 2, 2007.
In the instant expedited appeal, St. Augustine maintains that the district court erred in enjoining the school from imposing discipline against Curtis Lawrence, and that it was error in finding that irreparable harm existed under La. C.C.P. art. 3601. Further, St. Augustine argues, it was error by the district court by involving the court in the inner workings of a private educational institution, in contravention of the legal precedent of this court.

Discussion
In its first assignment of error, St. Augustine seeks review of the district court's order which enjoined it from enforcing discipline against Curtis Lawrence. St. Augustine contends that although the district court found a sufficient basis for imposing Routine Disciplinary Probation against Curtis Lawrence for his plagiarism, it enjoined St. Augustine from imposing "discipline viewed necessary by the Appellant to carry out its goal, mission, and objective served by its disciplinary system."
Mr. Lawrence sought an injunction pursuant to La.C.C.P. art. 3601(A), which provides that "[a]n injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law." The petition set forth that "[p]lacing the petitioner on Special Disciplinary Probation has caused irreparable harm, and that he is unable to complete the basketball season and will be deprived of the opportunity to compete for and receive an athletic scholarship."[4] The period *188 of Routine Disciplinary Probation commenced on December 18, 2006, the day on which the students had conferences with the school administration upon their readmission, post the one-day suspension. Hence, the routine probation imposed by St. Augustine would have last for approximately nine-weeks from December 18, 2006. Mr. Lawrence maintains that Curtis Lawrence would have missed out on opportunities to be offered basketball scholarships due to his probation.
Although each of the students were placed under Routine Disciplinary Probation, the commencement of this legal action by Mr. Lawrence, and the district court's subsequent judgment granting Mr. Lawrence's injunction as to Special Disciplinary Probation resulted in Curtis Lawrence not serving any probation while the other students have served their probation. Nevertheless, the district court also noted that the one-day suspension and Routine Disciplinary Probation should be imposed on the students equally. The district court acknowledged in its oral reasons for judgment, that the Routine Disciplinary Probation was not applied in an arbitrary nor capricious manner as to Curtis Lawrence nor any of the other students. The district court noted:
"Accordingly, that suspension and disciplinary action should be imposed on all the young men equally. And this young man would have to complete his sentence, so to speak, just as all the rest have done.
To the extent that he has served a part of this, and that was behind him at the time this action was filed, certainly, he deserves full credit for that. And under the order of the Court, and as the judgment will reflect, should have it.
But while the process was interrupted by the court for purposes of the restraining order litigation, he did not served that suspension. To that extent he must complete the discipline as imposed.
Additionally, the judgment in this matter reads:
IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, that the preliminary injunction issued in the above caption matter be and is hereby dissolved forth with as to the defendant, St. Augustine High School, regarding the imposition of the suspension and Routine Disciplinary Probation against Curtis Lawrence for the reasons orally assigned. . . .
The district court did not find any irreparable injury to warrant the issuance of a permanent injunction against St. Augustine to prevent the school from imposing Routine Disciplinary Probation. In fact, the district court noted:
". . . the Court has found that when tested against that standard, the initial imposition of the discipline to all of the young men, including Mr. Lawrence, was not arbitrary or capricious, nor did it lack due process.
Thus, for the reasons discussed above, we find that this assignment or error is moot, as the district court dissolved the preliminary injunction against St. Augustine upon a finding that the Routine Disciplinary Probation and suspension were even handed, and lacking in arbitrariness or capriciousness.
In its second assignment of error, St. Augustine argues that the district court erred by involving itself in the inner workings *189 of a private educational institution, in contravention of the holdings of this Court in Flint v. St. Augustine and Ahlum v. Tulane. St. Augustine avers that this Court has maintained that judicial involvement in the inner workings of a private educational institution should be "severely limited," and cites Flint v. St. Augustine High School, 323 So.2d 229 (La.App. 4th Cir.,1976), cert. denied, 325 So.2d 271 (La.1976) and Ahlum v. Administrators of Tulane Educational Fund, 617 So.2d 96 (La.App. 4th Cir.,1993), cert. denied, 624 So.2d 1230 (La.1993).
St. Augustine argues on appeal that the standard of review is de novo because the district court committed an error of law and misapplied the limitations of judicial involvement in the workings of a private educational institution.
The proper standard of review for a Louisiana appellate court is whether the trial court is manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). While the manifest error standard applies to our review of facts found below, we are required to examine the record as well for legal error. Where an error of law taints the record, we are not bound to affirm the judgment of the lower court. Id. at 844. Furthermore, when a trial court makes one or more prejudicial legal errors which interdict the fact-finding process, the manifest error standard is no longer applicable, and the appellate court is obliged to make its own independent, de novo review of the record if such is complete. Evans v. Lungrin, 97-0541, 97-0577, p. 7 (La.2/6/98), 708 So.2d 731, 735; McLean v. Hunter, 495 So.2d 1298, 1303-04 (La.1986). The Supreme Court stated in Evans: "Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights." Evans, 708 So.2d at 735.
In re Succession of Sporl, XXXX-XXXX p. 4, (La.App. 4 Cir. 4/6/05), 900 So.2d 1054, 1058.
In Flint, two students who were expelled from a private high school because of a second violation of the school's no smoking rule, sought relief. The district court rendered judgment, which enjoined the school from expelling the students, and ordered the students reinstated. The school sought certiorari. On review, this Court held: (1) that the district court could not judicially discard the fact that the principal of the school had given actual warning to one of the students prior to the violation which resulted in the student's dismissal; Id. at 234. (2) that the school was entitled to a very strong presumption that its internal administrative actions were taken in absolute good faith and for the mutual best interest of the school and the student body; and that procedures followed by the school in dismissing the students contained the necessary minimum due process safeguards. Id. at 235. The matter was reversed and rendered.
In Ahlum, a private university was enjoined by the district court from imposing disciplinary sanctions against one of its students for violation of the student code of conduct. The university appealed. This Court held that: (1) the decision of a private university could be reviewed only for arbitrary and capricious actions; Id. at 99, and that (2) neither the procedures employed nor the evidence relied on were deficient so as to render the university's decision arbitrary and capricious. Hence, the injunction was dissolved. Id. at 99.
In the matter sub judice, St. Augustine maintains that the district court erred in superseding "the actions, the discretion, and the decisionmaking (sic) authority of the Principal and the President of St. Augustine High School in imposing discipline in accordance with the Student Handbook." *190 St. Augustine contends that the same student handbook was acknowledged by Mr. Lawrence, his wife, and his son, Curtis Lawrence, as a student of the school.
Mr. Lawrence disagrees with St. Augustine's contention that private institutions have complete autonomy in controlling its internal disciplinary procedures, and maintain that the district court's ruling should be affirmed as there were no errors of law nor fact in the judgment. They maintain that the district court's finding that St. Augustine was arbitrary and capricious in placing Curtis Lawrence on Special Disciplinary Probation without due process, was supported by the law and evidence presented at trial of this matter, which included live testimony and affidavits of the persons involved in the incident.
Mr. Lawrence also maintains that the district court was correct in determining that the charged offense of plagiarism is a "Class C" offense in the St. Augustine Student Handbook, and is punishable by Saturday detention or a one-day suspension. The St. Augustine Student Handbook addresses plagiarism as follows:
9. Plagiarism
A student plagiarizes if he copies the language of another and represents the work as his own. Plagiarism is a Class C violation.
Class C violations, such as plagiarism, require "notification by the school office and [the student] must come in for a conference before the student will be allowed to return to school." The handbook also provides that a student who has been suspended will be placed on Routine Disciplinary Probation. However, Mr. Lawrence's concern stems from the fact that Curtis Lawrence's initial probation was followed by the imposition of Special Disciplinary Probation after the mandatory school[5] conference to readmit Curtis Lawrence was held on December 18, 2006. Mr. Lawrence argues that Special Disciplinary Probation is imposed for violations of Class D offenses, which are "infractions punishable by Saturday Detention, Dismissal, or Expulsion." In this manner, he argues, St. Augustine's actions in imposing Special Disciplinary Probation upon Curtis Lawrence was arbitrary and capricious, and deprived him of his due process. The pertinent provision in the student handbook reads as follows:
SECTION J. DUE PROCESS
To serve as a mechanism of due process, any student at St. Augustine High School who is accused of violating any of the rules or policies of St. Augustine high school as they are set forth in the student handbook, shall write down on a piece of paper that students side of the story concerning the incident involving the student. It is the student's responsibility to both write down his side of the story and deliver the paper with his story to the principal or his delegate on the day upon which the incident occurred.
If the event involves other students or members of the faculty and staff, they also shall be required to write down their version of events they witnessed or in which they participated.
After a thorough investigation, parents/guardians shall be notified and called in for a conference to discuss the event and all relevant facts.
Once a disciplinary decision has been rendered and the appropriate penalty assigned by the Principal or Assistant Principal, the matter is complete.

*191 Parents/guardians may write a letter of appeal to the president if they so desire. The president of St. Augustine will address each case individually and inform the parents/guardians of his final decision.
In support of his argument, that Curtis Lawrence was denied due process, Mr. Lawrence cites Babcock v. New Orleans Baptist Theological Seminary, 554 So.2d 90 (La.App. 4th Cir.1989). In Babcock, a theological seminary student sought an injunction to preclude the seminary from dismissing him. The district court entered a permanent injunction permitting the student to continue his studies, and a supplementary injunction which required the seminary to confer a degree on student. The seminary appealed. This Court affirmed and held that: (1) courts [have] jurisdiction to consider whether the seminary followed the due process procedure set forth in the student handbook in connection with the attempted dismissal of the student and later refusal to confer degree; Id. at 96, and (2) the attempted dismissal and withholding of degree was invalid, for failure to follow procedure. Id. at 98.
In the instant matter, Mr. Lawrence argues that the due process procedures in the student handbook were not followed. Particularly, Mr. Lawrence identifies "Section J," above, of the handbook as controlling. However, our review of this matter indicates that Curtis Lawrence never reduced his recollection of events to paper. Additionally, Mr. Lawrence also urges that at the trial of this matter, several defense witnesses admitted that they did not follow the procedures outlined for due process in the student handbook. In addition, one of the students who was accused of plagiarism indicated that he never received anything in writing from any faculty member involved in the investigation, nor did he receive any written notification from the administration prior to his being disciplined. The same student's mother also testified that she never received anything in writing from St. Augustine before her son was disciplined.
Several of St. Augustine's witnesses also testified that they did not follow this procedure. Ms. Butler, the English teacher, testified that she never officially submitted anything in writing to the administration nor to Curtis Lawrence nor his parents concerning the accusation of plagiarism. Father Doyle, President of St. Augustine, also testified that he never received any writings from any of the parties involved in the incident. Fr. Raphael testified that he did not see, nor did he require Ms. Butler, nor any of the students to submit anything to him in writing. His rationale was that since the incident involved writings, it was not necessary to put everyone's respective positions in writing.
Curtis Lawrence testified that he was first made aware of the allegations of plagiarism while at school on December 14, 2006. An announcement was made by Fr. Raphael that several students were involved in plagiarism. Later that day, several names were read over the intercom at which time those who were called were asked to report to the office. At that time, Curtis Lawrence testified under oath, he was notified that he was accused of plagiarism.
Once the students reported to the office, Curtis Lawrence testified, Fr. Raphael questioned the students. Although Fr. Raphael questioned all of the students, he also offered them the opportunity to admit their violation of the St. Augustine student handbook. While some of the students confessed, Curtis Lawrence, along with another student, refused to admit to plagiarism. The students were all notified of their one-day suspensions. At this time, *192 Curtis Lawrence testified, he was told to call his father and to notify him of the incident.
Although Curtis Lawrence testified that he had completed his assignment as early as August 2006, and that (1) he was aware of the meaning of plagiarism; (2) that he gave another student a copy of the writing assignment guidelines; and (3) that he allowed the student to copy his paper "as a reference," but Curtis Lawrence denied knowledge of what the student would do with his paper, and he also denied that helping another student by giving him his work constituted academic dishonesty. Furthermore, Curtis Lawrence also testified that he withheld information about whether or not he knew that the student had copied his paper, while he was questioned by Fr. Raphael during the investigation.
Curtis Lawrence also testified that Ms. Butler informed the students that they could use "Spark Notes" as a resource, but he denied that he copied the material verbatim, even though he admitted that he did use "Spark Notes." He would not admit that he failed to cite the source of the information he had obtained from the Internet.
COUNSEL: Would you please tell me where on that document you quoted or cited or said that you quoted or cited from the Spark Notes website.
CURTIS: I did not because she was aware that we were using Spark Notes.
* * *
Q: Do you understand the difference between studying from something and using it as a resource and actually quoting from it?
A: Correct.
Q: There is a difference, would you agree there is a difference?
A: I agree.
Q: And if you take material and it is verbatim, you understand, and put your name on it, that you are representing to whoever you turn that in to that it is your material and your words?
A: I am aware of that. But she told us that we could use Spark Notes as long as we didn't copy and go to that exact paper and copy everything word for word.
Mr. Lawrence testified that he was never notified about Curtis Lawrence's suspension because the notification was not in writing.[6] However, Fr. Raphael instructed Curtis Lawrence to call his father to inform him about the incident and to inform his father to come to the school for a conference. In addition, Mr. Lawrence, along with Mrs. Lawrence, and Curtis Lawrence met with Fr. Raphael on Monday, December 18, 2006, in a meeting which was required of all the students who served one day suspensions, upon their return to school. However, once Curtis Lawrence was interviewed for the last time upon his readmission, he still would not provide any answers to the questions posed by a member of the school administration, particularly, Fr. Raphael. St. Augustine determined that Curtis Lawrence failed to act honestly due to his refusal to give truthful answers.
Upon enrollment, Mr. and Mrs. Lawrence, along with their son, executed an acknowledgement, or receipt, which was signed on August 16, 2006, which availed Curtis Lawrence to the discipline of St. Augustine. Furthermore, Mr. Lawrence testified that although he did not agree *193 with the outcome of the investigation and the disciplinary process, it was St. Augustine's final call to determine if his son was guilty of plagiarism.
Mrs. Lawrence also testified in this matter. She indicated that she met with Fr. Raphael and provided him a copy of the Spark Notes website information used by Curtis Lawrence for his reading assignment. She indicated that although Curtis Lawrence did not copy the information verbatim, that his "character descriptions" were copied verbatim, and he did not give credit to the original source.
Ms. Butler also testified at trial. She indicated that upon reviewing the students' papers, she noticed that some were identical. She then notified Fr. Raphael, who instituted an investigation into the matter. She testified that at no time did she inform the students to use the Spark Notes website to generate their papers. However, she mentioned that some of the students complained that they would not be able to access the assigned book, but she informed them that Spark Notes could help them with a summary if they "did not know what was going on in the book, just so they would know what the book was about." She testified that she clearly prohibited them from copying their papers directly from the Spark Notes website.
Ms. Butler also testified that she was in attendance at the initial meeting between the school administration and the Lawrences on December 14, 2006. She averred that Curtis Lawrence and his father were both in attendance, but when Mr. Lawrence was given the opportunity to compare the papers, line by line, for similarities, he refused. She also described Curtis Lawrence's demeanor as "angry" because he could not play basketball because of his probation. She also testified that Mr. Lawrence was upset because Curtis Lawrence would not be seen by basketball scouts at the games.
Additionally, Mr. Sterling Fleury, Mr. Eric Fleury, Mr. Eric Smith, and Mr. Ozzie Ross[7] all testified, via affidavits, that all fourteen students were all questioned on December 14, 2006, as part of the plagiarism investigation. However, while twelve of the fourteen students freely confessed to their violation, Curtis Lawrence and the other student would not participate in the investigation, nor would they accept responsibility for their actions.
Rev. Joseph J. Campion,[8] also testified via affidavit that he was at the meeting on December 18, 2006, at which time the Lawrences were in attendance. He too indicated that Curtis Lawrence refused to accept responsibility for his actions.
Father Raphael testified that once he initiated the investigation, he prefaced his questioning by informing the young men to answer questions truthfully and honestly. He wanted to be clear to the students that if they were dishonest, then they would get extra penalties. Fr. Raphael indicated that he and several other faculty members took the similar papers and read them out aloud simultaneously to illustrate the evidence that was in his possession. Although he testified that not all 14 papers were plagiarized in the same way, they were all from the same source. However, he maintained that out of all the students questioned, only two would not admit to any wrongdoing. He also testified that students of St. Augustine are required, as provided in the student handbook, to cooperate *194 by mandate as a student of the school. This mandate requires truthful and honest answers to questions. He also testified that, "[d]ishonesty is a Class D violation, which is actually a more serious charge than a Class C violation. That's why the students are given that as a warning, less they be tempted to try and extricate themselves through dishonesty."
Additionally, Fr. Raphael testified as to the meeting he had with Mr. Lawrence on December 14, 2006. He indicated that Mr. Lawrence would not examine the papers, even though Fr. Raphael insisted that he examine them. Fr. Raphael indicated that even misspelled words were identical, although individual paragraphs may have been moved around by cutting and pasting them in different locations. However, as a result of his investigation, and given the fact that two students, including Curtis Lawrence, would not admit to wrongdoing, he imposed one-day suspensions along with Routine Disciplinary Probation, which lasted for nine weeks.
He also met with Mrs. Lawrence and her mother on December 18, 2006, and after they produced the material from Spark Notes, Fr. Raphael gave the remaining two students an opportunity to admit that plagiarism had taken place. He averred that even Mrs. Lawrence agreed that the material had been plagiarized, but that Curtis Lawrence still refused to admit wrongdoing, even at his mother's insistence.
Taking all of these matters into account, Fr. Raphael deemed Curtis' refusal to participate in the investigation as continued defiance or disrespect to a school official. A letter dated December 18, 2006, the same date of the re-admission conference which occurred the Monday after Curtis had served his one-day suspension, reads, in part:
"Your signature below is a condition for Curtis to return to school. It says to the fact that you fully understand the serious nature of this probation, that you agree to its terms, and that you clearly accept the consequences of failing to comply."
Hence, he imposed the special probation. Fr. Raphael's rationale was that the two students "were not respecting the process," and they would not take responsibility for what had taken place. However, the student handbook also provides that the administration may impose special punishment for special situations.
SECTION H: DISCRETIONARY CLAUSE
Although the rules set down in this handbook addressed the frequent violations of students today, the school reserves the right to vary the sanctions depending on individual circumstances. The school also has the right to pass judgment on behaviors, not written down in these pages, which are clear violations of the values we established as a Christian/Catholic school.
A student is subject to dismissal from school if his parent/guardian uses profanity or disrupts the ordinary function and operation of the school or school events.
* * *
SECTION I. PRINCIPAL'S AUTHORITY TO ENFORCE RULES
The principal of St. Augustine High School shall have authority on his own to dismiss a student who violates any infraction which is punishable by dismissal.

*195 * * *
Our review of the record indicates that the district court erred in finding that Mr. Lawrence was denied due process. In addressing the general principles of due process in Denham Springs Economic Development Dist. v. All Taxpayers, Property Owners and Citizens, 2005-2274 (La.10/17/06), 945 So.2d 665 the Supreme Court said:
". . . . [w]e note the requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of life, liberty, and property. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). When protected interests are implicated, the right to some kind of prior hearing is paramount. Mullane, 339 U.S. at 314, 70 S.Ct. at 657; Roth, 408 U.S. at 569-70, 92 S.Ct. at 2705. The range of interests, however, protected by procedural due process is not infinite, and the Supreme Court has rejected the notion that any grievous loss visited upon a person by the state is sufficient to invoke the procedural protections of the Due Process Clause. Ingraham v. Wright, 430 U.S. 651, 672, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977); Meachum v. Fano, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976); Roth, 408 U.S. at 570, 92 S.Ct. at 2705.
Under current United States Supreme Court case law, every procedural due process case requires application of a two-part test: first, whether a party has been deprived of a protected "life," "liberty," or "property" interest, i.e., whether the party had an interest protected by the constitution; and second, if so, whether the procedures in place comport with due process. American Manufacturers Mutual Ins. Co. v. Sullivan, 526 U.S. 40, 59, 119 S.Ct. 977, 989, 143 L.Ed.2d 130 (1999); Rhonda Wasserman, Procedural Due Process: A Reference Guide to the United States Constitution 31 (Praeger 2004). Only when protected interests are implicated does the right to some kind of notice and hearing attach. Ingraham, 430 U.S. at 672, 97 S.Ct. at 1413; Roth, 408 U.S. at 564-570, 92 S.Ct. at 2705; Wasserman, supra. Moreover, only after finding the deprivation of a protected interest or the implication of a protected interest in life, liberty, or property does the critical question become what process is due, i.e., whether the state's procedures comport with due process. Sullivan, 526 U.S. at 59, 119 S.Ct. at 989; Wasserman, supra.

Id., p. 23, 945 So.2d at 681.
Curtis Lawrence was not singled out because he was personally disliked by Fr. Raphael. On the contrary, as a student enrolled in a Catholic school, Curtis Lawrence, as well as the other students were expected to be truthful and honest. The Special Disciplinary Probation was imposed as a result of Curtis Lawrence's refusal to participate in the investigation. Higher standards of morality, integrity, and honesty are taught because the curriculum also includes a serious course of religious study. At all times during the school investigation, Curtis Lawrence was given every opportunity to truthfully disclose his involvement in the "plagiarism" scandal. At no time was Curtis Lawrence unaware of the charge he was faced with. Fr. Raphael, who is obviously a person of authority, investigated the matter by questioning all of the suspected students in furtherance of resolving the plagiarism scandal. The students, per the student handbook, were expected to answer all questions with honesty and truthfulness. Instead, Fr. Raphael testified that he was *196 met with silence, and what he deemed to be willful non-disclosure of information by both students.
At a subsequent meeting in which the other student admitted that he copied Curtis Lawrence's paper, Curtis Lawrence still refused to offer any information concerning alleged plagiarism. Hence, these two students refused to admit any misconduct even upon their return to school after serving their one-day suspensions.
Mr. Lawrence maintains that the imposition of Curtis Lawrence's probation was "arbitrary and capricious." As this Court stated in Ahlum, supra,
"The disciplinary decisions of a private school may be reviewed for arbitrary and capricious action. Babcock v. Baptist Theological Seminary, 554 So.2d 90, 97 (La.App. 4th Cir.1989); citing Lexington Theological Seminary v. Vance, 596 S.W.2d 11 (Ky.Ct.App.1979); Tedeschi v. Wagner College, 49 N.Y.2d 652, 427 N.Y.S.2d 760, 404 N.E.2d 1302 (1980); Coveney v. President & Trustees of Holy Cross College, 388 Mass. 16, 445 N.E.2d 136 (1983). Id. 617 So.2d at 99."
The Louisiana Supreme Court has defined "capricious" as a "conclusion made without substantial evidence or a conclusion contrary to substantial evidence." Coliseum Square Association v. New Orleans, 544 So.2d 351, 360 (La.1989) The word "arbitrary" "implies a disregard of evidence or of the proper weight thereof." Id. (Citations omitted). Using this standard, we find that neither the procedures employed nor the evidence relied upon by Tulane were deficient so as to render its decision arbitrary and capricious." (Emphasis ours)
Ahlum, 617 So.2d at 99.
However, based upon our review of the record, the testimony given by Curtis Lawrence shows his refusal to participate in the investigation, not a lack of adherence to due process procedures on the part of St. Augustine. "That is not to say that due process safeguards can be cavalierly ignored or disregarded. But, if there is color of due process-that is enough." Flint, 323 So.2d at 235.
Furthermore, once a final decision was made by the school administration, Mr. Lawrence pursued an appeal up the Josephite chain of authority, but was ultimately met with at least two affirmations of Fr. Raphael's decision. Hence, we find that the school did not violate any student's due process rights in this matter. Sections H and I, respectively, of the Student Handbook discussed above, provide that "the school reserves the right to vary sanctions depending on individual circumstances. The school has the right to pass judgment on behaviors, not written down in these pages," and the student handbook clearly sets forth that the Principal of the school, "shall have the authority on his own to dismiss a student who violates any infraction which is punishable by dismissal."
Additionally, we find that the discipline imposed was not arbitrary nor capricious. The ultimate decisions rendered by Fr. Raphael were not made based upon "conclusion[s] made without substantial evidence or a conclusion contrary to substantial evidence" or a "disregard of evidence or of the proper weight thereof." See Flint, supra (Citations omitted). Curtis Lawrence was given every opportunity to defend himself. St. Augustine determined that instead of giving truthful answers, he merely denied wrongdoing without any explanation as to how his paper came into the possession of another student, nor would he disclose how he came to have information from an internet website appear in his paper without identifying the source material. Although the district court focused its attention on the fact that *197 the students and administrators involved did not reduce their part in the matter to writing, Fr. Raphael had at least eleven (11) papers that were turned in by students who were involved in a deliberate attempt to turn in material they did not author in full nor in part. The failure to require these students to write their explanation of events in this matter does not constitute a fatal flaw sufficient to constitute deprivation of due process. Thus, we find that this assignment of error does have merit.
The district court erred by involving itself in the inner workings of St. Augustine High School, a private educational institution, in this matter, in contravention of the holdings of this Court in Flint v. St. Augustine High School, 323 So.2d 229 (La.App. 4th Cir.1976), cert. denied, 325 So.2d 271, (La.1976) and Ahlum v. Administrators of Tulane Educational Fund, 617 So.2d 96 (La.App. 4th Cir.,1993), cert. denied, 624 So.2d 1230 (La.1993). We find that the imposition of Special Disciplinary Probation on Curtis Lawrence by St. Augustine was not arbitrary nor capricious, and was clearly within the plenary authority of the institution. Further, we find that St. Augustine did provide and complied with all safeguards of procedural due process as outlined in its student handbook. All persons involved in this matter were appraised of the investigation, afforded an opportunity to be heard, and the school made a fair determination of penalties. As to this kind of school matter, courts must defer to the sound wisdom of educational institutions, absent clear evidence of the deprivation of due process. There is no such deprivation visited upon Curtis Lawrence in the matter sub judice.

DECREE
For the reasons stated herein, the portion of the district court judgment maintaining the Preliminary Injunction regarding the Special Disciplinary Probation is dissolved.
REVERSED AND RENDERED.
LOMBARD, J., concurs.
LOMBARD, J., concurs.
While the infractions committed by Mr. Lawrence were egregious, his record as an honor student and his body of work at St. Augustine over a five year period prior to this incident suggest that the denial of his participation in graduation ceremonies is a bit harsh, especially in light of the struggles of his parents who, more than he, look forward to this day.
NOTES
[1] Curtis Jude Lawrence, the petitioner on behalf of his minor son, shares the same name with his son, Curtis Joseph Lawrence. In this opinion, Curtis Jude Lawrence (Curtis the elder), shall be referred to as "Mr. Lawrence," while Curtis Joseph Lawrence (Curtis the younger), shall be referred to as "Curtis Lawrence." Any references to the family collectively, or generally, will be referred to as "the Lawrences."
[2] The names of the other students are being withheld pursuant to the Family Education Rights and Privacy Act.
[3] The matter was signed by a duty judge.
[4] The petition also asserts that "Fr. John Rahel's (sic) actions were motivated by a personal dislike for him and his father Curtis Jude Lawrence, and will cause immediate and irreparable injury to your petitioner."
[5] The second student who would not confess also received Special Disciplinary Probation.
[6] Per the student handbook, the notification may be made orally or in writing.
[7] Mr. S. Fleury is a teacher and Assistant Disciplinarian; Mr. E. Fleury is the Assistant Librarian; Mr. Smith is the Assistant Principal and Mr. Ross is a Biology teacher;.
[8] Rev. Campion is the Campus Minister of the high school.