323 So.2d 229 (1975)
Barry FLINT and Donald Plaisance, Sr., Administrator of the Estate of Donald Plaisance, Jr.
v.
ST. AUGUSTINE HIGH SCHOOL and St. Joseph's Society of the Sacred Heart, Inc.
No. 7496.
Court of Appeal of Louisiana, Fourth Circuit.
December 1, 1975.
Rehearing Denied December 4, 1975.
Writ Refused January 9, 1976.
*230 Joseph W. Thomas, New Orleans, for plaintiffs-appellees.
Nelson, Nelson & Lombard, Ltd., John P. Nelson, Jr., New Orleans, for defendants-appellants.
Before STOULIG, BOUTALL, and BEER, JJ.
BEER, Judge.
St. Augustine High School is a private school established in New Orleans in 1951. According to its Student Handbook, it is conducted by The Society of St. Joseph and dedicated laymen. That handbook, admitted into evidence in these proceedings, also informs those who read it that:
The registration of a student [at St. Augustine] is considered an acceptance on his part and on the part of his parents or guardian of all the rules and regulations of St. Augustine High School including the judgment of school authorities on discipline, suspension or expulsion of students."
(St. Augustine High School Student Handbook 1974-75 p. 12)
It further provides that:
"Students are forbidden to smoke within two blocks of the school grounds. Violation of this rule incurs a fine of ten dollars for those who smoke as well as for those present in a gathering where this rule is being violated. Violators may not return to school until the fine is paid. REPETITION WILL RESULT IN DISMISSAL." (Emphasis theirs.)
(St. Augustine High School Student Handbook 1974-75 p. 26)
Barry Flint was a student at St. Augustine High School. He entered in 1973 and attended every school term since enrolling.
On October 27, 1974, March 27, 1975 and September 29, 1975 he smoked on the school grounds in violation of the school rule.
*231 Before the violation of September 29, 1975 the following described exchange took place between Barry Flint and Mr. Leo A. Johnson, Jr., the principal of St. Augustine High School:
"Prior to the third incident, Barry was standing inside the restroom. He was just standing there. I walked up to Barry, I told him, `Barry, you know that you have been caught smoking before, and if you get caught again, you'll be dismissed from school.' He raised his hands up and said, `I understand.' and walked away."
Barry Flint was expelled from St. Augustine High School on October 1, 1975 (following the third violation) and sought relief from that expulsion in the Civil District Court for the Parish of Orleans.
Donald Plaisance, Jr. was also a student at St. Augustine High School. He entered in September of 1972 and attended every school term since enrolling. On October 8 or 9, 1975 (about one week after the expulsion of Barry Flint) Donald was accused of smoking in the rest room of the school by Mr. Leo A. Johnson, Jr. As a direct and immediate result of this confrontation the following exchange took place according to the sworn testimony of Mr. Johnson:
"I brought Donald to the office. I said, `Donald, you know the penalty for smoking.' He said, `Yes, a $10.00 fine.' I said, `You can't return until you bring the $10.00 fine.' He said, `Yes, I know.' I said, `You know you're going to get a letter that if you smoke again you will be dismissed from school.' He [sic] answer was, `Yes, I know.'
"I said, `Are you sure you understand, Donald?' He said, `Yes, I understand.' That was the first incident. Then the letter went out on October 13th."
The abovementioned letter, dated October 13, 1975 and signed "Leo A. Johnson, Jr., Principal," contains the following unequivocal statement:
"This letter is to inform you that your son has violated the rule governing smoking and has been penalized $10.00. Please refer to page 26 of the Student Handbook regarding Restricted Areas.
"In addition, if he is guilty of violating this rule again while in attendance at St. Augustine High School, he will be automatically expelled.
"Hopefully, I will have your assistance in seeing to it this rule is not violated again."
That letter was duly received by Plaisance's parents and brought to his attention by them.
Then, on October 20, 1975 an incident took place which is best described by Mr. Johnson's sworn testimony:
"* * *. On the 20th of October I went into the restroom. This time Donald was again in that same stall with a cigarette in his hand. I walked up in total disbelief and shock."
Donald Plaisance, Jr. was expelled from St. Augustine High School on October 20, 1975 and sought relief from that expulsion in the Civil District Court for the Parish of Orleans.
Trial of both matters on November 7, 1975 resulted in a judgment, rendered November 12, 1975, which enjoined St. Augustine High School from expelling Barry Flint and Donald Plaisance and ordered them reinstated as students of the school.
However, the enforcement of that judgment was suspended by the trial court while a writ of certiorari was sought by the school. This court granted the writ, continued the suspension of the judgment of November 12, 1975, received additional memoranda from able counsel for both parties and heard oral argument on November 25, 1975.
The trial court made factual determinations which, we believe, are supported by the record.
*232 Rather than paraphrase, we quote herewith:
"For at least six or eight years, and certainly for a period beginning much earlier that plaintiffs' enrollment there, defendant St. Augustine High School has included in its published `Student Handbook' a rule forbidding students to smoke on or in the near vicinity of the school grounds. The penalty set forth in the published rule has always been a fine of ten dollars, with the following additional provision, or one substantially similar thereto: `Repetition will result in dismissal.' The ten dollar fine has always uniformly been assessed by school authorities. The penalty of dismissal for a second offense had never been imposed upon any student until plaintiffs were expelled. Many students were previously caught violating the no-smoking rule repeatedly; all were fine; no one was expelled or even suspended from school.
"At the beginning of the 1974-75 school year, Mr. Leo Johnson assumed the position of principal of St. Augustine High School. Previously, he had been a faculty member for seven years. At St. Augustine, the principal has the ultimate authority in matters of discipline of students. During his first year as principal, Mr. Johnson did not enforce the expulsion penalty for the second smoking offense. Indeed, plaintiff Flint was caught smoking in October of 1974 and in March of 1975. On each occasion the principal levied a $10.00 fine, which was paid. The evidence does not indicate that there was even any discussion about expulsion.
"Mr. Johnson testified that, at some point thereafter, he decided to enforce the expulsion penalty, when it was called to his attention that it was in the Student Handbook. He did not say who called it to his attention or when when that occurred. While the handbook containing the rule and the never-before-invoked penalty was distributed to students at the beginning of the current school year, the decision to commence enforcing the expulsion penalty for second offenders was never promulgated to students or faculty.[1]
"Mr. Johnson testified that on an occasion shortly before the date on which Flint was expelled, he saw him standing inside the rest room and warned him that if he were caught smoking again, he would be dismissed from school. Flint says that he never understood any such clear warning. The Court is convinced that both of them testified truthfully.
"At any rate, the school never used any of the many means available to warn students of the new policy as to enforcement of the expulsion penalty for repeated smoking violations. No message was ever placed on a bulletin board, no announcement was made at any student assembly, no communication was sent to parents. Flint's expulsion provided the perfect opportunity to warn possible future violators that they faced expulsion. However, the reason for Flint's dismissal from school was never announced and within three weeks plaintiff Plaisance faced the same fate. Plaisance learned for the first time after his own expulsion that Flint had also been dismissed from school for smoking.
"On September 29, 1975, plaintiff Flint was caught smoking. On the basis of his offense in March of the previous school term, he was expelled two days *233 later when the principal returned from an out-of-town meeting.
"Plaintiff Plaisance was fined for smoking on or about October 9. The principal himself saw Plaisance in the rest room, and although he did not see Plaisance with a cigarette, he concluded from the circumstances that Plaisance was in fact smoking. The principal adviced the student that he would have to pay a fine for smoking, and Plaisance did so. Four days later, a letter was sent to Plaisance's parents, advising them of his violation of the no-smoking rule and warning that repetition would result in expulsion.[2] About a week thereafter, the principal saw Plaisance in the rest room with a lighted cigarette in his hand and expelled him from school.
"Plaintiff Plaisance testified that he was not smoking on the first occasion on which he was fined, that he tried to so explain to the principal, but that he was given no opportunity. The Court has no reason to doubt the truthfulness of his testimony. Plaintiff admitted that his parents received the letter warning of possible expulsion, but stated that he did not believe that the penalty would be invoked, apparently in view of the past history of non-expulsion and since he had not in fact been smoking the first time."
The trial court's judgment in favor of Flint was, therefore, apparently based upon both a factual finding that although the verbal warning was given by Johnson it was not heard or clearly understood by Flint and, further, upon the legal conclusions which the trial court stated as follows:
"This Court's initial inclination was to maintain defendants' exception of no cause of action, on the basis that as a matter of law no Court has the right to interfere with the administration of a private school such as St. Augustine. This inclination was undoubtedly strengthened by the very high regard which the Court has for St. Augustine High School, its administrators and faculty. The school has an outstanding reputation, hard-earned and richly deserved. But these same considerations lend weight to plaintiffs' contention that judicial review should be available to them. The right to graduate from a particular high school has a value directly related to the standing of the school. A diploma from St. Augustine High School is something to be cherished, of inestimable value in this community.
"To hold that under no circumstances may a court nullify the expulsion of a student from a private school could lead to an absurd result. Senior students such as plaintiffs, who have invested in pursuit of a St. Augustine diploma considerable money as well as time and effort of much more value than money, could then conceivably be expelled for no reason at all with no remedy available to them. If a student has the right to court protection from completely arbitrary expulsion action on the part of a private school, a right which he must be accorded, then defendants' exceptions must be overruled.
"On the other hand, it is not for the court to say what a private school's discipline rules should be, nor should a court substitute its own judgment for that of the school administrators as to the proper method of dealing with discipline problems. St. Augustine will remain the great educational institution which it is only if strict discipline is maintained among its student body; thus the school administrators must have a free hand in maintaining that discipline. Nevertheless, as stated above, individual students also have rights.
"This case, involving the rights of students in a non-public school, is apparently *234 a case of first instance in Louisiana (and perhaps in the United States). In somewhat analogous situations, Louisiana courts have enunciated the rule that courts will not interfere with the disciplinary actions of private organizations, so long as the regulation involved is fairly and uniformly applied, after due notice to the parties involved. Considering the facts summarized above, it can hardly be said that the expulsion penalty for repeated smoking violations has been uniformly applied after due notice to the students of the intention on the part of the school to begin enforcing it.
"A written rule which, to the knowledge of students and faculty, has never been enforced over a period of many years is not a rule at all.
"Finally, it should be stressed that the decision in this case does not mean that the penalty in question may never be invoked in the future, provided that due notice of the intention to enforce it is first given to the students and their parents in clear, unmistakable terms, so that they will understand that the old `rule' actually practiced is being discarded in favor of strict enforcement of the written rule."
The trial court's judgment in favor of Plaisance must necessarily rest on the legal conclusions noted above for there can be no doubt about the actual receipt of the written warning transmitted to Plaisance in the letter of October 13, 1975. It was acknowledged by him in his sworn testimony.
Though we would have, perhaps, authored a less drastic or harsh punishment than expulsion, we cannot say that such a penalty was beyond the scope of the disciplinary powers granted to the principal and acknowledged to be clearly within his authority and discretion. Accordingly, our attention must necessarily focus on issues which are, therefore, substantially narrowed by these observations, the trial courts findings and its conclusions. Thus, we limit the scope of our deliberations to two issues:
1. Since the trial court did find as a fact that Johnson orally warned Flint prior to the violation that precipitated his dismissal that he would, indeed, be dismissed if he again violated the rule would Flint's failure to hear and/or understand be a basis for our judicially discarding the warning;

and
2. Are the trial court's legal conclusions correct?
We answer both queries in the negative.
Although the trial judge expresses the view that Johnson and Flint each testified truthfully, we believe Flint's testimony to be equivocal in support of his contention that he did not hear and/or comprehend the seriousness of Johnson's warning whereas, we believe Johnson's testimony on this important point to be clear, categoric and unequivocal. Faced with the trial judge's equal finding regarding the actual truthfulness of the statements, we opt for the conclusion that supports the acceptance of that testimony which is most compelling and thus we do not judicially discard the fact of the actual warning to Flint.
Turning to a consideration of the legal conclusions of the trial court, we first take note of the vast difference required in dealing with matters such as these in private versus public high schools.
Self-imposed time limitations (because of the obvious need to review this matter with deliberate speed) obviate our ability to here set out a detailed delineation of the differences. Sufficient for our purpose here is the observation that private institutions like St. Augustine High School have a near absolute right and power to control their own internal disciplinary procedure which, by its very nature, includes the right and power to dismiss students.
*235 That is not to say that due process safeguards can be cavalierly ignored or disregarded. But, if there is color of due processthat is enough.
We believe that the facts found by the trial court support a legal conclusion that there were here present such necessary minimum safeguards as were required to take the actions of dismissal out of the ambit of being arbitrary or capricious or without probable cause.[1]
Though the methodology was different in each case, both young men were on notice of the result which would ensue upon their next violation of the smoking rule. When the specific dismissal-precipitating violations did, indeed, occur, the young men were confronted by their accusers and the record offers no indication that these specific accusals were unjustly or erroneously made. The dismissals quickly followed.
Fundamental rights of all parties are very much at issue here. We do not consider the basic due process rights of Flint and Plaisance to be any less important or any less deserving of protection than those of St. Augustine High School which also clearly requires protection if it is to survive as a private, properly disciplined, functioning institution of learning.
We have not sought to balance the one against the other. We have only concluded that the procedure followed by St. Augustine High School in the cases involving these two young men is not such as to require the State of Louisiana, through its judicial system, to intercede.
That such judicial restraint may have an unhappy and seriously disconcerting effect on the academic lives of these two young men causes us grave concern in view of the disciplinary decision to dismiss rather than suspend them. But an even graver concern would be caused by our failure to impose the judicial self-restraint that is called for in this case.
St. Augustine himself observed that when he was in Rome he fasted on the days set aside for that purpose by the Romans, though they were not the same as the days that he fasted while at home. He thus may be considered the original author of the oft used phrase: "When in Rome do as the Romans do."
These young men were obliged, while at St. Augustine High School, to do as they were required by the rules of the school which they deliberately chose to ignore. Having determined, as we do, that such due process rights as they were entitled to in the premises have not been so violated as to sully the school's action, we reverse the judgment of the Civil District Court.
The judgment of the Civil District Court for the Parish of Orleans dated November 12, 1975 is hereby reversed. Judgment is rendered in favor of Defendants-Appellants St. Augustine High School and St. Joseph's Society of The Sacred Heart and against Plaintiffs-Appellees Barry Flint and Donald Plaisance, Sr., Administrator of the estate of Donald Plaisance, Jr., dismissing plaintiffs' suit at their cost.
Reversed and rendered.
STOULIG, J., concurring with written reasons.
STOULIG, Judge (concurring).
I concur.
I am of the further opinion that St. Augustine, a private institution, has the absolute discretion to prescribe such rules, regulations, and penalties for the violation thereof as it deems necessary for the preservation of discipline in the furtherance of its scholastic and related endeavors. And *236 as a corollary thereto it possesses the unlimited right and power to dismiss students through the designated authority unrestricted by the constitutional requirements of procedural due process imposed by the federal courts on officials in the field of public education.
Acceptance of a student by a private school does not create a vested right to continued acceptance. Dismissal carries with it only the right to the return of a pro rata of tuition for the unexpired current term.
The malicious or arbitrary exercise of the authority of dismissal may well give rise to an action in damages under the tort laws of this State; however, it can never serve as a legal basis for the student to demand his reinstatement. The right of a private school to dismiss a student for an infraction of its rules is absolute.
NOTES
[1] Not even the members of the disciplinary committee were aware of the change in enforcement policy. Mr. Eddie Flint, a member of the faculty of many years, learned of the `new rule' only after plaintiff Flint's expulsion. Defendant's contention that students should have known of the expulsion penalty and should have expected it to be imposed is somewhat incongruous when weighed against the principal's lack of knowledge of the rule after many years of faculty service and a year as principal, and the general lack of knowledge by students and faculty alike.
[2] No such warning letter was issued in Flint's case.
[1] In this regard, St. Augustine High School is entitled to the very strong (though rebut-table) presumption that its internal administrative actions are taken in absolute good faith and for the mutual best interests of the school and the student body.