MAX N. TOBIAS, JR., Judge.
11This is the second time this court has addressed an appeal in this case. By way of background, we quote from our original opinion, I.F. v. Administrators of the Tulane Educational Fund, 11-0308, pp. 1-3 (La.App. 4 Cir. 8/24/11), 72 So.3d 462, 462-65:
I.F., the plaintiff/appellant, appeals from a judgment dismissing his petition for preliminary and permanent injunction against the defendant/appellee, the Administrators of the Tulane Educational Fund (“Tulane”). For the reasons that follow, we reverse the judgment of the trial court and remand the matter to the court below for further proceedings consistent with this opinion.
I.F., a Tulane student, was accused of raping K.K., also a Tulane student, in the early morning hours of 18 September 2009. In addition to filing a complaint with Tulane, K.K. also contacted the New Orleans Police Department (“NOPD”), after which I.F. was arrested and charged with simple rape and false imprisonment. I.F. was acquitted on all charges by the criminal court without his putting on a defense.
*494 After his acquittal, I.F. participated in ■a three-day disciplinary proceeding before the Tulane Joint Hearing Board for his alleged violation of the Code of Student Conduct (“the Code”). I.F. was charged with “Sexual Misconduct,” which is defined as “non-consensual sexual behavior which may occur as a result of force, threat, intimidation, or through the use of the victim’s mental or li>physical helplessness of which the accused was aware or should have been aware.”
After the August 2010 hearing, the Joint Hearing Board found that “clear and convincing” evidence existed that K.K., the victim, was intoxicated and that I.F. knew or should have known of this fact. On 7 September 2010, the Joint Hearing Board issued its decision finding that I.F. was responsible for sexual misconduct as charged.
On 27 September 2010, following the procedures outlined in the Code, I.F. filed an appeal of the Joint Hearing Board’s decision to Tulane’s Appellate Board. I.F. claimed that (a) new and significant evidence had appeared that he could not have discovered before or during the hearing; (b) procedural errors deprived him of a fair hearing; and (c) the decision by the Joint Hearing Board was arbitrary and capricious. The appeal was rejected on 7 October 2010.
On 25 October 2010, I.F. filed a petition for preliminary injunction and permanent injunction seeking to enjoin Tulane from imposing, enforcing, or recording the discipline related to the Joint Hearing Board’s decision and to reverse the decision. The trial court held a hearing on the petition on 17 November 2010, at which time it ruled that the scheduled hearing on affidavits was inappropriate because I.F. sought a mandatory injunction for affirmative relief;. thus an evidentiary hearing was required. The hearing was rescheduled for 5 January 2011. In the meantime, Tulane filed a motion to dismiss the petition based on the record, which included the transcript from the Joint Hearing Board hearing and various documents that were introduced therein. I.F. opposed the motion.
On 5 January 2010, prior to the scheduled evidentiary hearing, the trial court heard oral argument on Tulane’s motion to dismiss. The trial court granted the motion and dismissed I.F.’s petition with prejudice. The trial court requested that Tulane prepare the judgment and reasons for judgment. It did so; the reasons for judgment were over twenty pages in length. I.F. filed a competing judgment and objected to Tulane’s proposed reasons for judgment. In particular, I.F. objected to the continued reference to “evidence” because no “evidence” was introduced into the record. In addition, I.F. objected to many of the factual assertions that differed with the material previously submitted. In |3any event, the trial court signed the reasons for judgment prepared by Tulane without any revision.
Following a review of the record and applicable law, we found that the trial court erroneously dismissed I.F.’s[1] petition for a mandatory injunction:
The petition in question raises many genuine issues of material fact such that both a judgment on the pleadings and a summary judgment would be inappropriate vehicles by which to dismiss the *495 pleading. Therefore, we find that the trial court erred in granting the motion to dismiss before holding an evidentiary-hearing as required by law.
Because of the procedural error committed by the trial court, we do not reach the merits issues of whether I.F. was afforded due process and/or whether Tulane was arbitrary and capricious.
Based on the foregoing, we reverse the judgment granting the motion to dismiss filed by Tulane and remand the matter to the trial court for an eviden-tiary hearing on I.F.’s request for a mandatory injunction.
Id. at p. 8, 72 So.3d at 467. In doing so, we specifically found that I.F. had stated a cause of action against Tulane. Id. at p. 7, 72 So.3d at 467.
Notwithstanding our findings and mandate for an evidentiary hearing, one day after the reversal, Tulane re-urged its exception of no cause of action and alternatively motion for summary judgment and/or judgment on the pleadings. In response, I.F. filed a motion to strike and for sanctions. Tulane filed its own motion for sanctions as well. The re-urged exception and motions filed by the parties were denied by the trial court.
I/The required evidentiary hearing on I.F.’s petition for mandatory injunction, as amended, was held on 25-26 April and 12 December 2012. The trial court specifically stated that it was only hearing the issue of whether I.F. was accorded due process, declining to hear and decide the issues of whether the decision rendered by Tulane was arbitrary and capricious and whether 1.F. was entitled to the prayed-for mandatory injunction.[2]
At the conclusion of the hearing, Tulane moved for an involuntary dismissal, which was granted by the trial court. The court requested that a judgment be prepared and circulated; Tulane’s counsel undertook the task. Notwithstanding the instruction to submit only an order (judgment), Tulane prepared and submitted reasons for judgment incorporated as a part of the judgment itself. Despite objections from I.F., the trial court adopted those reasons for judgment with minimal changes.[3] In those reasons for judgment, the trial court found that I.F. received due process in connection with the Tulane proceedings and that Tulane was not arbitrary and capricious. This timely appeal followed.
I.F. has assigned four errors for review:
1. The trial court erred in limiting the review of Tulane’s disciplinary decision to whether I.F. received notice, an opportunity to be heard, and an opportunity to present evidence;
2. Tulane’s actions were arbitrary and capricious and violated I.F.’s due process safeguards;
3. The trial court erred in failing to issue a mandatory injunction; and
|54. The trial court erred in denying I.F.’s motion to strike and for sanctions.
At the close of the testimony and argument on 12 December 2012, the trial court stated:
Mickey [LF.’s counsel, Mickey All-weiss], look. I feel your pain and I admire your passion. I just don’t agree with your interpretation and the facts and the law.
If no other time on cross-examination he admitted over and over that he saw *496 this document, he understood that, he understood the charge, I am convinced that he got minimal due process.
I’m going to grant the motion. Note your objection for the record. Y’all are going up, I know.
Somebody give me an Order, circulate it among yourselves first. I note your objection for the record so that it will be preserved.
Instead of creating an order (we presume the court meant a final judgment) granting the involuntary dismissal, counsel for Tulane drafted a 22-page document entitled, “Judgment and [incorporated] Reasons for Judgment,” which, Tulane admits, was not sent to opposing counsel before it was filed with the court on or about 16 January 2013.[4] After protests by counsel for I.F., the trial judge contacted I.F.’s counsel that same afternoon and requested I.F.’s own proposed reasons for judgment. Stating that the trial court had ruled from the bench with only limited reasons, I.F.’s counsel opined that he did not have adequate insight into the basis for the ruling and could not, in good faith, provide detailed reasons. Instead, I.F.’s counsel submitted a proposed judgment. The trial court | (¡subsequently signed the document submitted by Tulane without any substantive changes on 22 February 2013.[5]
We observe that the judgment and reasons for judgment were contained in the same document, contrary to the mandate of La. C.C.P. art.1918:
When written reasons for judgment are assigned, they shall be set out in an opinion separate from the judgment. [Emphasis supplied.]
Put otherwise, a judgment should not include reasons for judgment. Furthermore, an appeal lies only from the judgment, not from the reasons. Greater New Orleans Expressway Com’n v. Olivier, 02-2795, p. 3 (La.11/18/03), 860 So.2d 22, 24. However, this error does not invalidate a judgment that is complete and valid except for the inclusion of reasons.
In examining reasons for judgment, we stated in Burkett v. Crescent City Connection Marine Division, 98-1237, pp. 10-11 (La.App. 4 Cir. 2/10/99), 730 So.2d 479, 484-85:
Courts may adopt those findings submitted by one party and reject those of the other. In re Las Colinas, Inc., 426 F.2d 1005 (1st Cir.1970). “[T]he integrity of the judicial process demands (1) close scrutiny by the district court for *497 accuracy from the standpoint of fact and law, plus (2) that degree of clarity which is necessary for a review of what is essentially the work of counsel.” State of Florida v. Charley Toppino & Sons, Inc., 514 F.2d 700, 703, n. 7 (5th Cir. 1975).
Although a trial judge might adopt most or almost all of a party’s suggested reasons for judgment, the reasons and the judgment itself will stand as long as the record supports them. In Lancaster v. Petroleum Corp. of Delaware, 491 So.2d 768, 773 (La.App. 3[rd] Cir.1986), the court stated:
Though it is not a common practice in Louisiana for the trial court to allow counsel to prepare the Court’s reasons for judgment, it is an accepted practice. [See J. Lemmon’s dissent in Miller v. Smith, 402 So.2d 688 (La.1981)]. This procedure is also permitted in Federal courts, and the United States Supreme Court has stated that where counsel has prepared the Court’s reasons for judgment:
“Those findings, though not the product of the workings of the district judge’s mind, are formally his; they are not to be rejected out-of-hand, and they will stand if supported by evidence.” United States v. El Paso Natural Gas Company, 376 U.S. 651, 656, 84 S.Ct. 1044, 1047, 12 L.Ed.2d 12 (1964).
Here, the judgment and reasons for judgment contain a fundamental error that requires reversal and remand. During the hearing, the trial court specifically limited admissible evidence to the issue of due process. It would not and did not consider any evidence going to the issue of whether Tulane’s decision was arbitrary and capricious pursuant to our jurisprudence and as we directed in our prior opinion. However, the judgment and incorporated reasons specifically discuss the sufficiency of the evidence in determining the issues of arbitrariness and capriciousness, going far beyond the evidence that was heard by the court.
|sIn the first opinion, we remanded the matter to the trial court for an evidentiary hearing on two issues: (1) due process and (2) arbitrariness and capriciousness. This, the trial court failed to do, instead requiring I.F. to proffer all testimony and corresponding evidence for our review. Without hearing the evidence, the trial court should not have issued reasons for judgment on the issues of arbitrariness and capriciousness.
The problem herein is that all the reasons for judgment are not supported by the evidence. Therefore, we are compelled to set them aside in their entirety along with the incorporated judgment and remand the case to the trial court for further proceedings.
We also find that the trial court erred by failing to examine the appellate process afforded by Tulane. We acknowledge that Tulane’s due process procedure may afford protections beyond that required by state law. However, Tulane must adhere to the standards it provides. It imposed upon itself the duty by its own policies and procedures and it is obligated contractually to follow through completely, meaningfully, and in good faith. We find that it did not do so in this matter, but only insofar as the limited evidence that appears before us presently; that is, the trial court granted Tulane’s motion for an involuntary dismissal and Tulane never put on its evidence to prove that it afforded I.F. appropriate due process. The Joint Hearing Board was concerned with the issue of whether K.K. made a phone call *498 that she denied making. I.P. could not have known that this issue would be of importance until the hearing. When I.F. provided phone records on the issue of K.K.’s credibility to Tulane’s appellate panel, the panel failed to consider that evidence. In fact, the appellate panel, from what we can tell, did not | Review the entire record from the Joint Hearing Board. We find that even minimal due process, as well as the procedures Tulane adopted, requires more.
When students enter Tulane, they are presented with a manual entitled: “Student Conduct Policies and Procedures.” This manual provides in pertinent part:
B. Procedural Due Process Rights
1. Procedural Review:
The chief judicial affairs officer or designated representative reviews the charged student’s procedural due process rights. These rights include, but are not limited to: access to his/her case file; right to have an advisor of his/her choice at the hearing selected from faculty, staff, or students of the University (such an advis- or in no case shall be legal counsel or campus police officer): and, the right to bring witnesses to the hearing. [Emphasis supplied.][6]
As we stated in Babcock v. New Orleans Baptist Theological Seminary, 554 So.2d 90, 96-97 (La.App. 4th Cir.1989):
Thus, the Trial Court did not err in holding that this dispute was more in the nature of a contractual dispute than an ecclesiastical one, and neither did the Trial Court err in holding that school publications given to students were part of the terms of a “contract” between a school and its students. Courts in other jurisdictions have indicated that the relationship between a student and a private educational institution may be considered contractual in nature and school publications may serve as evidence of the “contract”. See, Lexington Theological Seminary v. Vance, 596 S.W.2d 11 (Ky.Ct.App.1979); Tedeschi v. Wagner College, [49 N.Y.2d 652, 427 N.Y.S.2d 760, 404 N.E.2d 1302 (1980)] supra; Napolitano v. Princeton Univ. Trustees, 186 N.J.Super. 576, 453 A.2d 279 (1982). Likewise, we believe Babcock and the Seminary were in a type of contractual relationship during his matriculation at the Seminary.
| mApplying Babcock to the facts herein, we find that I.F. and Tulane were in a contractual relationship during I.F.’s attendance at Tulane.
In Flint v. St. Augustine High School, 323 So.2d 229, 233 (La.App. 4th Cir.1975), writ denied, 325 So.2d 271 (La.1976), this court stated that a private institution has almost complete autonomy in controlling its internal disciplinary procedures. Additionally, this court stated that “a private institution is entitled to a very strong but rebuttable presumption that its internal administrative actions are taken in absolute good faith and for the mutual best interest of the school and the student body.” Id. at 235, n. 1. [Emphasis supplied.]
In Ahlum v. Admin. of Tulane Educational Fund, 617 So.2d 96, 98-99 (La.App. 4th Cir.1993), we stated:
The judiciary has recognized that a private institution, as compared to a public institution, has the power to create, administer and implement its own rules and procedures concerning the *499 qualifications and conduct of its students, staff and faculty. Absent some form of state action, the courts have refused to hear claims which allege that a private institution’s practices have violated constitutional guarantees. See Blouin v. Loyola University, 506 F.2d 20 (5th Cir.1975); Wahba v. New York University, 492 F.2d 96 (2nd Cir.1974).
The fact that the judiciary adheres to this policy of judicial restraint does not render the actions of a private institution inviolate. As the language in Flint recognizes, the power of a private institution is not absolute: “That is not to say that due process safeguards (in private institutions) can be cavalierly ignored or disregarded.” Id. at 235. The disciplinary decisions of a private school may be reviewed for arbitrary and capricious action. Babcock v. Baptist Theological Seminary, 554 So.2d 90, 97 (La.App. 4th Cir.1989); citing Lexington Theological Seminary v. Vance, 596 S.W.2d 11 (Ky.Ct.App.1979); Tedeschi v. Wagner College, 49 N.Y.2d 652, 427 N.Y.S.2d 760, 404 N.E.2d 1302 (1980); Coveney v. President & Trustees of Holy Cross College, 388 Mass. 16, 445 N.E.2d 136 (1983). Therefore, if the record indicates that Tulane’s actions in suspending Ahlum were arbitrary and capricious, then its decision may be reviewed by the judiciary.
The Louisiana Supreme Court has defined “capricious” as a “conclusion made without substantial evidence or a conclusion contrary to substantial evidence.” Coliseum Square Association v. New Orleans, 544 So.2d 351, 360 (La.1989). The word “arbitrary” “implies a disregard of evidence or of the proper weight thereof.” Id. (Citations omitted).
We have also examined the “Conduct Manual” for joint hearing boards, conduct officers, and conduct advisors. In addition to a more fully explained meaning of “clear and convincing evidence,” it also contains a three-page single-spaced explanation of sexual misconduct cases and the questions the joint hearing boards must answer in deciding whether to sustain such a charge.[7] I.F. testified that he was not given or shown this manual in order to prepare for his hearing at which he was prohibited from having an attorney represent him; no evidence refutes his statement. What I.F. had was only the definition as set forth in the student conduct manual at III. A. 22:
Sexual Misconduct: defined as noncon-sensual sexual behavior which may occur as a result of force, threat, intimidation, or through the use of the victim’s mental or | ^physical helplessness of which the accused was aware or should have been aware.
I.F. was entitled to know the standards by which his evidence would be received, his burden of proof, and what the hearing panel would be considering when determining whether he was guilty of sexual *500 misconduct. Based on the record before us, which does not contain the evidence that Tulane would have presented if the trial court had not granted the motion for involuntary dismissal, we find that I.F.’s procedural due process rights were ill-defined, ambiguously applied, and, as such, presumptively violated. Thus on the issue of whether Tulane afforded I.F. appropriate due process, we must vacate and reverse the trial court’s decision in order to afford the parties an opportunity to put on all relevant evidence.
Because we find that the trial court did not consider the issue of whether Tulane’s actions were arbitrary and capricious, we must, once again, reverse and set aside the judgment and remand the matter to the trial court for a full evidentiary hearing on this issue. Our previous order of remand did not limit review to due process considerations; we also required the court to consider whether Tulane was arbitrary and capricious. We find that the trial court did not consider the appropriateness of Tulane’s appellate process when determining whether I.F.’s due process rights were violated.[8] This, too, is a matter to be considered upon remand.
Finally, we address the issue of whether the trial court erred in denying I.F.’s motion to strike and for sanctions. As stated earlier, we held in our first opinion that I.F.’s petition raised many genuine issues of material fact such that both a judgment on the pleadings and a summary judgment would be inappropriate | ^vehicles by which to dismiss the pleading. Id. at p. 8, 72 So.3d at 467. We also held that I.F. had stated a cause of action against Tulane. Id. at p. 7, 72 So.3d at 467.
Nevertheless, one day after the reversal, Tulane re-urged its exception of no cause of action and, alternatively, its motion for summary judgment and/or judgment on the pleadings. In response, I.F. filed a motion to strike and for sanctions, to which Tulane filed its own. The re-urged exception and motions filed by the parties were denied by the trial court.
We find that the trial court was not manifestly erroneous and did not abuse its discretion by denying I.F.’s motions, although the actions of Tulane may be the outer limit of how far counsel might go, especially in this case where we specifically held I.F. stated a cause of action and Tulane immediately urged that I.F. had not stated one. In doing so, the trial court stated:
Okay. As to the Motions for Sanctions, it’s clear that this case has become a little contentious among the parties. But I think sanctions is [sic] always a harsh remedy unless the conduct is very, very harsh. All I see before me so far is just zealous representation of your clients, which I would expect nothing less.
So as to both Motions for Sanctions, I’m going to deny, and note your objections for the record.
We decline to reverse the trial court on this issue, noting that a trial court has broad authority in the imposition of sanctions, which may range from monetary penalties to a milquetoast dressing down as a warning not to do the same again.
|14We reverse the judgment and remand the matter to the court below for further proceedings consistent with this opinion.
REVERSED; REMANDED.

. Because of the sensitive nature of the facts of this case, we have chosen to use some witnesses' and parties’ initials in lieu of their names, although their names appear in the sealed record. See La. R.S. 46:1844 W.

. Due to this limitation, I.F. proffered a substantial amount of testimony and evidence for this court’s review.

. This court does not know exactly what changes were made, but I.F. alleges that no substantive changes were made by the trial judge, an assertion Tulane does not deny.

. In a letter dated 22 January 2013, Tulane's counsel stated to I.F.'s counsel: "While we admit that we did not submit the proposed reasons to you for your approval in advance of submitting them to the Court, we believed that you would respond as you did in January 2011 and object to the content and admit that the proposed reasons for judgment reflected the Court's ruling.”

. We note that Tulane’s counsel failed to circulate its proposed judgment and reasons for judgment to opposing counsel for review and comment prior to submitting the document to the court, a clear violation of Rule 9.5(b) of the Uniform Rules for Louisiana District Courts, which states as follows:
If presented later, the responsible attorney or the self-represented party shall circulate the proposed judgment, order, or ruling to counsel for all parties and to self-represented parties and allow at least five (5) working days for comment before presentation to the court. When submitted, the proposed judgment, order, or ruling shall be accompanied by a certificate stating: the date of mailing; the method of delivery of the document to other counsel of record and to self-represented parties; whether any opposition was received; and the nature of the opposition. [Emphasis supplied.]

. The manual calls into question Tulane’s continued insistence that the only due process rights to which I.F. was entitled were notice and an opportunity to present his version of the facts.

. The Conduct Manual, on the issue of "Burden of Proof,” states:
Tulane University uses clear and convincing as the standard for the burden of proof. Clear and convincing evidence means that a conduct officer or the conduct board must be persuaded by the evidence that is [sic] highly probable that the claim is true. The clear and convincing evidence stand [sic] is a heavier burden than the preponderance of the evidence but less than beyond a reasonable doubt. It is important to remember, however, that the student conduct process is designed to hold Tulane students accountable to the standards set by the University and the impact of the violation on the Tulane University community should also be considered.
I.F. testified that he was not aware of the final sentence highlighted above, which is not disputed in the record presently before us.

. The trial court stated: "If you got a faulty appeal process, it’s not relevant. As long as you have notice, an opportunity to be heard, and opportunity to put evidence in.”